## No. 11,583.

### JOYCE *v*. THE PEOPLE.

Decided April 4, 1927. Rehearing denied May 9, 1927.

Claim against conservator for maintenance of ward in state hospital for insane. Claim allowed.

### *Reversed.*

1. STATUTES—*Construction.* Statutes should be so construed as to give effect to every part thereof.

2. Insane Persons—*Maintenance.* State held entitled to expense of maintenance of an insane person in state hospital for insane, from his estate, under R. S. § 4129—where committed thereunder—only until the repeal of the section by c. 118, S. L. '15.

3. Appeal and Error—*Constitutional Questions.* Constitutional questions raised in the original brief of plaintiff in error, but withdrawn in the reply brief, will not be considered on review.

*Error to the County Court of Weld County, Hon. Roy M. Briggs, Judge.*

Mr. Harry N. Haynes, Mr. Ralph L. Dougherty, for plaintiffs in error.

Mr. William L. Boatright, Attorney General, Mr. A. L. Beardsley, Assistant, for the people.

*Department One.*

Mr. Justice Denison delivered the opinion of the court.

The county court allowed the claim of the state of Colorado against William Joyce, conservator of the estate of Edward Joyce, lunatic, for the maintenance of the ward in the state hospital for the insane. The conservator brings error.

Edward Joyce was committed to the asylum January 1, 1900. At that time R. S. § 4129 was in force. It was enacted in 1893, and is as follows: "* * * The county court shall order the said lunatic to be placed in the state insane *asylum,* or other hospital or place, suitable for the treatment of the insane. If such lunatic has any estate in the hands of his conservator, *an account for the keeping of said lunatic shall be rendered by the proper authorities of said asylum* or hospital or the owner or owners of any other place where he has been treated, to the county court, by which said commitment was ordered, and upon the further order of said court the conservator

shall pay said account, * * *. If said lunatic has no estate, said account shall be presented to the county commissioners of said county * * * Provided, however, That no such account for treatment in the state lunatic asylum shall be so presented or audited.''

The Attorney General claims that this section gives the right to recover from the estate of the lunatic the price of his keep. The terms of the statute justify his claim. The plaintiff in error argues with much skill that the last sentence of the section refers to accounts to be rendered in case the lunatic has property as well as in case he has none, but that construction ignores the portion of section 4129 which we have italicized and makes the last sentence thereof contradict it, while the proposition of the Attorney General, that the proviso refers only to cases where the lunatic has no estate, gives effect to both. *People v. Morgan,* 79 Colo. 504, 246 Pac. 1024; *Campbell v. People,* 78 Colo. 131, 239 Pac. 879. Moreover it gives a reasonable result, i. e. that the state will not make a county pay the lunatic's expenses, but will make the lunatic do so if he has the means. This construction is confirmed by C. L. § 5364, which provides that no administration of the estate of a mental incompetent who has been committed to the state asylum shall be settled till the proper authorities have certified that all claims of the asylum have been paid. This proviso was inserted in 1917, but it has the force of a legislative construction of the section above quoted. Why should the settlement await the release of an unlawful claim?

By chapter 118, Session Laws of 1915, however, the legislature enacted new laws with reference to the commitment and treatment of the insane and expressly repealed the above section, by number, without any saving clause, but included in said enactment section 8 thereof, now C. L. § 556, which contains the following: ''If any patient, *committed under this act* has any estate in the hands of his conservator an account of his keeping shall be rendered by the proper authorities of the asylum or

hospital, or the owner or owners of any other place to which he has been committed, or where he has·been treated, to the county court by which said commitment was ordered, and upon the further order of said court the conservator shall pay said account.''   *   *   *

It then goes on as in the section above quoted. Plaintiff in error says that R. S. § 4129 has been repealed, and that C. L. § 556 cannot apply to the lunatic now in question, because he was not ''committed under this act.'' We see no answer to that proposition. The expression ''committed under this act'' was perhaps an oversight, but it is not for us to say so, and therefore we must say that the terms of that section do not embrace the present case, though for persons committed under the later act it seems to make provision similar to those in the previous act. Under the former section, however, up to the time of its repeal, the state acquired a ''vested right to remuneration for the keep of the lunatic,'' and the mere repeal of that section could not take it away. A surrender of that right would require an express declaration or necessary implication to that effect by the legislature.

The plaintiff in error in his original brief seems to raise the point that the acts in question are unconstitutional, but in his reply brief he seems to withdraw that point, so we do not consider it. These considerations make it unnecessary to notice other points in the briefs.

The judgment of the county court is reversed with directions to allow the state's claim for the keep of the lunatic from his commitment to the date of the repeal of R. S. § 4129, and disallow the remainder.

MR. CHIEF JUSTICE BURKE, MR. JUSTICE SHEAFOR and MR. JUSTICE WHITFORD concur.