# No. 14,714.

## THE PEOPLE v. RAPINI ET AL.

(112 P. [2d] 551)

Decided April 7, 1941.

Mr. FRANK DELANEY, for the people.

Mr. ALLYN COLE, for defendants in error.

*En Banc.*

MR. JUSTICE OTTO BOCK delivered the opinion of the court.

DEFENDANTS in error, to whom we hereinafter refer as defendants, were charged in a two-count information filed in the district court of Garfield county with law violations on separate dates, as follows: That they "did unlawfully move a certain vehicle, to-wit, a binder, on a State Highway within said county, which said vehicle and binder was then and there equipped with flanges, cleats, and metal protuberances on the tires and wheels which was then and there in contact with the surface of said highway and said flanges, cleats, and metal protuberances being then and there of such a nature that the same did injure the highway." The information was based upon section 149·(c), chapter 164, Session Laws of 1935 (section 264[c], chapter 16, '35 C.S.A.), which is as follows: "No tire on a vehicle moved on a highway shall have on its periphery any block stud, flange,

cleat or spike or any other protuberances of any material other than rubber which projects beyond the tread on the traction surface of the tire except that it shall be permissive to use farm machinery with tires having protuberances which will not in the opinion of the State Highway Department injure the highway, and except also that it shall be permissible to use tire chains of reasonable proportions upon any vehicle when required for safety because of snow, ice or other conditions tending to cause a vehicle to skid." The penalty for violations of this provision is found in section 171, chapter 164, Session Laws of 1935 (section 286, chapter 16, supra).

After the jury was sworn to try the case, and the people had called their first witness to the stand, counsel for defendants objected to the introduction of any testimony for the reasons: (1) That the information did not charge an offense under the laws of the state of Colorado; and (2) that the facts set forth as constituting the offense did not constitute a crime under the laws of this state. This objection was sustained, and on motion of said counsel the court instructed the jury to return a verdict of not guilty. Counsel for the people excepted to the rulings and judgment of the court and, pursuant to section 500, chapter 48, '35 C.S.A., the people are here by writ of error, seeking a review of the judgment.

Two of the assigned errors which we will consider are:

"(3) The Court erred in holding and deciding that binders are exempted as implements of husbandry, from the operation of Section 264(c) of Chapter 16, 1935 Colorado Statutes Annotated; Laws 1935, Ch. 164, Sec. 149(c).

"(4) The Court erred in holding and deciding that implements of husbandry are exempted from the operation of the Statutes of this State which require vehicles to be devoid of cleats or protuberances in order to avoid injury to the pavement."

This controversy centers on the meaning of the word "binder," contained in the information. It perhaps would have been sufficient to use only the word "vehicle," without the word "binder," in describing, in the information, the device alleged to have been unlawfully on the highway, and that the word "binder" is mere surplusage. The contention of counsel for defendants is that the word "binder" is to be construed as meaning an "implement of husbandry" within the meaning of section 126(b), chapter 164, supra, the pertinent part of which reads as follows: "The provisions of this article with respect to equipment on vehicles shall not apply to implements of husbandry, * * * except as herein made applicable." Sections 126(b) and 149(c) are parts of article XV of the act, and, in the ascertainment of the legislative intent, must be harmonized with other sections of the act, so as to give effect to its purpose, if possible. The people concede that a binder is an implement of husbandry. So the issue is: Whether section 149(c), supra, is "made applicable" to implements of husbandry therein described so as to take them out of the exceptions enumerated in section 126(b), supra. In approaching this problem of interpretation there should be kept in mind well known rules of statutory construction, such as: (1) The legislative intent is to be ascertained and given effect (*People v. Texas Company,* 85 Colo. 289, 275 Pac. 896); (2) that in ascertaining the intention of the legislature the courts should consider the old law, the mischief, and the remedy (*Armstrong, Secretary v. Simonson,* 84 Colo. 472, 271 Pac. 627); (3) that, if possible, effect should be given to every clause and section (*Denver v. Campbell,* 33 Colo. 162, 80 Pac. 142); (4) that where two constructions are possible, by one of which the entire act may be harmonized, while the other will create discord between different provisions, the former should be adopted (*Colorado Springs Live Stock Co. v. Godding,* 20 Colo. 71, 36 Pac. 884).

■■ All of chapter 164, Session Laws of 1935, of which the above-quoted sections are a part, is an amendment of Parts III and IV, chapter 122, Session Laws of 1931. Both acts deal generally with "motor and other vehicles" on the public highway. The 1931 act sheds some light on the intent of the legislature in passing the 1935 act. In the 1931 act there were no exceptions pertaining to implements of husbandry, such as we find in section 126(b) of the 1935 act. Section 149 of the latter was lifted almost verbatim from section 114(b) of the 1931 act. The section of the 1931 act applied to implements of husbandry, they not being specifically or otherwise excepted. The 1935 act exempts implements of husbandry "except as herein made applicable." The objectives of the legislature in passing both acts relate to the regulation of vehicular traffic and protection of public highways. The inhibitions of section 149(c), hereinbefore quoted, are "made applicable" to the use, on highways, of implements of husbandry, e. g., binders, or vehicles equipped with forbidden tires, by the very act of which the section is a part. Under the 1931 act, the information in the instant case would properly have charged an offense prohibited by section 114 thereof. If it had been the legislative intent to entirely eliminate implements of husbandry, such as binders, from the provisions of the act, the legislature would also have entirely omitted the clauses in sections 149(c) and 149(d), supra, pertaining to special permission of the highway department to transport farm machinery, which, otherwise prohibited, would, under the claimed construction of counsel for defendants, amount to mere surplusage and be of no effect. The protection of the highway being one of the objects of the 1931, as well as the 1935, act, the legislative intent must have been to achieve this object by prohibiting vehicles that would be injurious to highways. To give section 149(c) any other construction would, in our opinion, be contrary to the legislative intent. To give it the construction for which

counsel for defendants contends would largely render the legislative protection of highways insufficient. Courts will not so construe statutes as to lead to absurd results. *Hessick v. Moynihan,* 83 Colo. 43, 262 Pac. 907.

The contention of counsel for defendants that a binder is not a vehicle within the meaning of section 149(c) is without merit. A sufficient answer thereto is the definition found in section 1(a), chapter 122, S.L. '31, as follows: "(a) 'Vehicle.' Every device * * * drawn upon a public highway, excepting devices moved by human power or used exclusively upon stationary rails or tracks"; and the definition in section 3(d), chapter 164, of the 1935 law, reading: "(d) Implement of Husbandry.—Every vehicle which is designed for agricultural purposes and exclusively used by the owner thereof in the conduct of his agricultural operations exclusive of transportation." A binder—farm machinery —which concededly is an implement of husbandry, also is a "vehicle" within the meaning of section 149(c), supra. In construing said section we find no substantial ambiguity. The granting of the motion for an instructed verdict of not guilty was error.

Counsel for the people suggests that in construing a statute the practical construction given to it by public officers charged with its enforcement, in case of doubt, is entitled to consideration. Citing *Hessick v. Moynihan, supra.* In line with this suggestion he states that signs bearing the words "Vehicles with Lugs or Flanges Prohibited," or of similar import, are found on many of the more improved highways in the state. Counsel for defendants urges, that since there was no evidence introduced in the case (although his motion prevented such a course), this discussion is beside the question. In view of our construction of section 149(c), supra, we deem it unnecessary to take judicial notice of traffic signs on public highways, but this should not lead to the conclusion that we do not know of their existence. We, in common with other travelers, solely in the interest of

self-preservation, if for no other reason, pay some attention to traffic signs on the highways and, naturally, our conduct is at least influenced thereby.

 Counsel for defendants further argues that if we sustain the construction for which counsel for the people contends—which we do—then the act as related to the subject matter under discussion violates section 21, article V, of the state Constitution, since neither highways nor farm machinery are mentioned in the title. The title of the 1931 act is as follows: "An act relating to motor and other vehicles, providing a penalty for the violation thereof and repealing all acts and parts of acts in conflict therewith." The title of the 1935 act is: "An act relating to motor and other vehicles, amending chapter 122 of the Session Laws of Colorado for the year 1931 and repealing all acts and parts of acts in conflict therewith." It will be noted that both are acts "relating to motor and other vehicles." Is a binder such "other vehicle"? It is not questioned that a binder, which is a farm machine, is an "implement of husbandry," the statutory definition of which we have hereinbefore quoted. The definition of the term "vehicle," also is set out above. A binder, being a farm machine, and an implement of husbandry, is therefore a "vehicle" within the meaning of the title of the act. In *Driverless Car Co. v. Armstrong,* 91 Colo. 334, 14 P. (2d) 1098, we said: "In the title, particularity is neither necessary nor desirable; generality is commendable."

That portion of the legislation here involved is necessarily incidental to, and included in, the general subject expressed in the title of the act, which, as already stated, deals generally with all vehicles operated on the public highway. Since implements of husbandry, such as binders, may be considered to be "vehicles," as expressed in the title, the constitutional provision is not violated. There is no merit to the contention of unconstitutionality.

■ As a postscript to this opinion, it should be said that although we have concluded to dispose of the matters presented by the record as made below, we do not wish to be understood as approving the practice of raising the questions here involved by an objection to the introduction of any evidence. In *Critchfield v. People,* 91 Colo. 127, 13 P. (2d) 270, we refer to the correct practice, which is by motion to quash, and not by an objection to the introduction of evidence. The strategy of counsel for defendants seemed to be to have defendants placed in jeopardy, so that, whether right or wrong in his contention, his clients could not again be tried on the same charges. The questions involved in the motion could, of ·course, be raised at any time, even after trial, by a motion in arrest of judgment; but when the objections are not meritorious, the result is a miscarriage of justice, unless raised at the proper time. To raise the question, as counsel did in the instant case by objection to the introduction of any evidence—if the objection is sustained—places the prosecution in a position where a plea of former jeopardy may successfully be interposed in the event of another trial. This may be by some considered smart practice, but its use is not beneficial to law enforcement. The trial court might properly have protected the prosecution against such a contingency by overruling defendants' motion. If this course had been adopted in the present case defendants would not escape prosecution on a plea of former jeopardy, whatever the conclusion of the trial judge would have been on a motion in arrest of judgment. Whether, under the circumstances, a plea of former jeopardy would be good, we do not determine. Counsel for the people conceding that defendants have been in jeopardy, we confine ourselves in this review to a discussion of the questions involved without the entry of a formal order. Judgment disapproved.

MR. CHIEF JUSTICE FRANCIS E. BOUCK and MR. JUSTICE BURKE concur specially.

MR. JUSTICE YOUNG and MR. JUSTICE HILLIARD not participating.

MR. JUSTICE BURKE specially concurring.

I concur in the result. I think the comment on former jeopardy should be omitted. The district attorney's concession does not bind this or the trial court, and does not bind the district attorney, should he later conclude differently. To hold this former jeopardy is a plain nullification of section 18, article II, of our Constitution on the subject, and every decision to the contrary, if such there be, should be overruled.

MR. CHIEF JUSTICE FRANCIS E. BOUCK concurs herein.