No. C-407

The People of the State of Colorado ex rel. Duke W. Dunbar, Attorney General of the State of Colorado, and The State Board for Community Colleges and Occupational Education of the State of Colorado v. Trinidad State Junior College, Community Colleges of Denver, Metropolitan State College, and The University of Colorado v. Colorado Polytechnic College

(520 P.2d 736)

Decided March 18, 1974.          Rehearing denied April 22, 1974.

306

John P. Moore, Attorney General, John E. Bush, Deputy, William Tucker, Assistant, for petitioners.

Hubert D. Henry, James C. Henry, for respondent.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

We granted certiorari to review the decision of the Court of Appeals in the case of *People ex rel. Dunbar v. Colorado Polytechnic College,* 32 Colo. App. 166, 512 P.2d 1172 (1973). There it was held that Colorado Polytechnic College was an eleemosynary educational institution, 1967 Perm. Supp., C.R.S. 1963, 146-3-3(3)(c), and not a proprietary school. *Id.* 146-3-3(2).

Originally, Colorado Polytechnic College brought suit for a declaratory judgment that the Proprietary School Act of 1966, 1967 Perm. Supp., C.R.S. 1963, 146-3-1 *et seq.,* was unconstitutional. On appeal, we disagreed and upheld the Act. *Colorado Polytechnic College v. State Board for Community Colleges,* 173 Colo. 39, 476 P.2d 38 (1970). This action was then brought by the State Board of Community Colleges. The Board asked the district court to enjoin Colorado Polytechnic from further operations pursuant to 1967 Perm. Supp., C.R.S. 1963, 146-3-14.

The hearing in the district court revealed that Colorado Polytechnic fulfilled all the requirements of a nonprofit proprietary school, notwithstanding the rather vague description of the purposes of the school. Nowhere was it shown that Colorado Polytechnic was other than a type of trade school not for profit. Accordingly, the district court enjoined Colorado Polytechnic from operating until they complied with the Act. The Court of Appeals reversed. We reverse the Court of Appeals.

## I.

In 1966, the legislature enacted comprehensive legislation which regulates the growing number of privately funded vocational institutions in this state. 1967 Perm. Supp., C.R.S. 1963, 146-3-1 *et seq.* The purposes of the Proprietary School Act are set forth in the legislative declaration contained in *id.* 146-3-2:

"The general assembly hereby declares that the provisions of this article are enacted in the exercise of the police powers of this state *for the protection of the health, peace, safety, and general welfare of the people of this state; for the general improvement of educational programs available to the residents of this state; to prevent misrepresentation, fraud, and collusion in offering such educational programs; to establish higher standards for, and to protect, preserve, foster, improve, and encourage the educational programs offered to the public;* and to encourage the residents of Colorado to attain a high degree of excellence in the pursuit of education. *To these ends, this article shall be liberally construed.*" (Emphasis added.)

By its very terms, this declaration is a clear mandate to this court that our interpretation of the article be a liberal application of the article's protections.

The Act defines proprietary school in 1967 Perm. Supp., C.R.S. 1963, 146-3-3:

"(2) 'Proprietary school' means any business enterprise *operated for a profit or on a nonprofit basis* which maintains a place of business either within or without this state, and

"(a) which offers or maintains a course or courses of instruction or study, or

"(b) at which place of business such a course or courses of instruction or study is available through classroom instruction or by correspondence, or both,

to a person or persons for the purpose of training or preparing such person for a field of endeavor in a business, trade, technical, or industrial occupation, *except as excluded pursuant to subsection (3) of this section.*" (Emphasis added.)

One exception to those subject to regulation as proprietary

schools is contained in *id.*, (3)(c): "A parochial, denominational, or *eleemosynary* school or institution." The district court found, on the basis of ample evidence in the record that, though operated on a not-for-profit basis, Colorado Polytechnic was in fact a proprietary school. The Court of Appeals reversed, holding that the institution was eleemosynary and, therefore, an exception to the proprietary school definition. As we read the Court of Appeals opinion, the practical effect is to make the terms "nonprofit" and "eleemosynary" one and the same. In our view, they are not synonymous.

## II.

It is a fundamental principle of statutory construction that the meaning of words used in a statute must be discerned by reading the entire statute. *Doenges-Glass, Inc. v. General Motors Acceptance Corp.,* 175 Colo. 518, 488 P.2d 879 (1971). Conversely, when the meaning of a statute is unclear, the legislative intent is divined by considering the language used in the context of the statute *and the purposes thereof.* Any construction which is inconsistent with the general purposes of a statute must be rejected in favor of that construction which furthers the legislative intent. *Kirschwing v. O'Donnell,* 120 Colo. 125, 207 P.2d 819 (1949). As heretofore noted, we view the legislative declaration as a clear mandate in favor of a liberal application of the Act, 1967 Perm. Supp., C.R.S. 1963, 146-3-2, and such interpretation as our overriding duty.

Looking first to the term "proprietary school," we note that the legislature has carefully defined its meaning. *Id.* 146-3-3(2). Accordingly, we need not supplant or augment the meaning of the words, and their plain meaning is to be given full effect. *Kirschwing v. O'Donnell, supra.* "Eleemosynary," on the other hand, is not defined, and we must construe its meaning consistent with the remainder of the Act. The entire subsection reads:

"(3)(a) The definition of a proprietary school shall not include the following:

\* \* \*

"(c) A parochial, denominational, or eleemosynary school or institution."

The Court of Appeals, in discerning the meaning to be given "eleemosynary," looked to its common law definition and succinctly set forth the characteristics of an eleemosynary institution. We believe that analysis was unnecessary. We need not concern ourselves with what the term ordinarily means, but rather, with what it means in the context of the statute. *Doenges-Glass, Inc. v. General Motors Acceptance Corp., supra.* When viewed in light of the adjunct words "parochial" and "denominational," it is clear the legislature intended eleemosynary to apply to those educational institutions which were organized by and operated under charitable or philanthropic auspices. Any other interpretation would render the definition of nonprofit proprietary schools contained in section 146-3-3 nugatory. We must construe both sections in that manner which preserves their plain meaning.

### III.

The district court found that Colorado Polytechnic College was a proprietary school. Since there is no evidence in the record which conflicts with that finding, the decision of the Court of Appeals is reversed and remanded for further remand to the district court for reinstatement of the injunction.

MR. CHIEF JUSTICE PRINGLE does not participate.